James E. COOK, Plaintiff,

v.

AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY, Defendant.

Civil Action No. 95–D–1021–S.

United States District Court, M.D. Alabama, Southern Division.

Sept. 10, 1996.

---

Kenneth C. Sheets, Jr., Dothan, AL, for plaintiff.

Brock Gordon, Mobile, AL, Jere C. Segrest, Tina Stamps, Dothan, AL, for defendant.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the Court is defendant American General Life & Accident Insurance Company's motion filed December 11, 1995, for summary judgment. Plaintiff James E. Cook filed a response in opposition on February 9, 1996. The defendant then filed a reply to the plaintiff's response on March 11, 1996. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the Court finds that the defendant's motion is due to be granted.

## JURISDICTION AND VENUE

Based upon 28 U.S.C. §§ 1331, 1367 and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq., the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

## FINDINGS OF FACT

This is an action under the Age Discrimination in Employment Act ("ADEA") alleging an unlawful demotion and a constructive discharge. The plaintiff also asserts a state law claim for alleged breach of contract. Plaintiff James E. Cook ("Cook") seeks damages for loss of present and future wages, loss of earning capacity and impairment as well as for stress, anxiety and emotional distress. He also seeks reinstatement and attorney's fees.

Cook was first employed by Interstate and Gulf Life Insurance Company, which has now merged with defendant American General Life and Accident Insurance Company ("American General"), in 1966. American General markets its products through home service sale agents employed in district offices such as the one in Dothan, Alabama, where Cook was employed. Each district office has several staffs of sales agents who work under a sales manager. The sales managers in turn report to a district manager who is in charge of the overall management of the district office. Yates Aff. at 1–2.

Shortly after Cook was hired, he was promoted to a sales manager's position, and he remained a sales manager for approximately 15 years. Cook eventually volunteered for a demotion to sales agent, however, noting that the sales manager position involved ". . . too much running. And I wanted a debit. I went back. Easier work," and further that ". . . I was happy as an agent. There's a lot of headaches in being a staff manager. . . . And there wasn't a whole lot of difference in the money in an agency that I could make in the staff job." However, Cook later returned to the sales manager position, testifying that ". . . I let Mr. George Hodges, which (sic) was manager at the time, convince me that I needed to go back in the sales manager's job." Cook Dep. at 9–12.

In September 1993, sales manager Cook was asked to attend a meeting with his district manager, Michael Peters, and Peters' boss, regional director Joe Yates. At the time of attending said meeting, Cook knew that an investigation was underway concerning the affairs of Paul Tye ("Tye matter"), an agent on Cook's staff. The Tye matter resulted in expensive and time consuming claims and litigation against the company and caused Yates to lose confidence in Cook's managerial ability. Yates Aff. at 2. Cook was informed at the meeting that Mr. Peters, who is approximately 20 years younger than Cook, was being demoted from district manager to sales manager, and that Cook was being asked to step down as sales manager "to make room" for Mr. Peters. Cook's Dep. at 22, 28, 49. Furthermore, company records show that such an explanation was given to Cook at the time and that he agreed to the demotion, saying he could "handle it." Yates' Aff.; Cook's Dep. at 29; see also, Personnel Change Form. At the time of the demotion, Cook was 61 years old. E.E.O.C. Charge.

Cook maintains that he was given no reason for his demotion other than "to make room" for Mr. Peters. Cook, however, acknowledges that he was told at some point that he was selected for demotion because, of the three sales managers, Cook "had the lowest amount of growth" in 1993. Cook's Aff. at 1; Cook's Dep. at 31. The other two sales managers at that time, Tim Acree and Harry Joe Phillips, were younger than Cook, but both had better productivity than Cook when measured by objective standards of performance. Yates' Aff. at 3.

For example, both Acree and Phillips had better year-to-date net progress, which is one of the objective standards utilized for measuring performance of both agents and managers.[1] At the time of the demotions, Acree's year-to-date net progress was $17,905.00; Phillips' was $7,837.00, and Cook's was only $4,502.00. Yates' Aff. at 3. Moreover, both Acree and Phillips had better average year-to-date growth.[2] At the time the

---

1. This calculation represents the annualized premium dollars of insurance policies the agents on an entire staff have sold year-to-date, minus the annualized premiums of policies that have lapsed, i.e., been canceled. Policies that have lapsed due to death or because they are fully paid are excluded from this measurement.

2. This figure represents the weekly average of annualized premium dollars of insurance policies that agents on the staff have sold year-to-date,

demotions were made, Acres' average year-to-date growth was $377.00, Phillips' was $117.00, and Cook's was $10.00. Yates' Aff. at 3–4. Finally, both Acree and Phillips had better minimum standards average progress, another objective standard for measuring productivity.[3] At the time of these demotions, Acree's minimum standards average progress was $425.00, Phillips was $166.00, and Cook's was $161.00. Yates' Aff. at 4. Cook acknowledged that these objective criteria are fair measures of performance, and he agreed that his performance in 1993 as compared to Acree and to Phillips "wasn't as good" as theirs. Cook's Dep. at 34–35.

Cook filed his charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 22, 1994, challenging as unlawful his demotion of September 29, 1993. Although his EEOC charge only complains of his demotion, Cook also alleges in his judicial complaint a count for constructive discharge. In support of his constructive discharge claim, he alleges that upon demotion, he was given a poor quality of accounts, he received no income adjustment as was provided for Peters, and that two sales manager positions were filled by younger applicants. Cook Dep. at 28, 54–55. Cook testified, however, that the accounts he was given were the only ones available at the time of his demotion. Cook Dep. at 28. Cook also testified that he had previously given written notice to the company that he was not interested in promotion to a management position and that he never thereafter informed any responsible person that he was interested in a promotion, explaining that "it's just not the customary thing to do." Cook Dep. at 54–55, 64. Cook continued to work as a sales agent until March, 1995, when he retired from his employment. Yates Aff. at 5; see also termination report.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Supreme Court of the United States has noted, on the other hand, that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

At the summary judgment stage, the court must construe the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion,

---

minus the weekly average of annualized premium dollars of policies that have lapsed. Again lapse due to death or because they are fully paid are not included in this measurement.

**3.** This figure measures the average weekly annualized premium dollars of insurance policies sold by agents during a 52–week rolling period, minus the average weekly annualized premium dollars of policies that have lapsed during the same 52–week rolling period.

and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553 (citing Fed.R.Civ.P. 56(c)). Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

## DISCUSSION

### I. ADEA Claims: Unlawful Demotion and Constructive Discharge

The ADEA, the federal statute under which Cook predicates liability, provides that "[i]t shall be unlawful for an employer … to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (brackets supplied). In order to fall under the ADEA's protections, an employee must be "at least 40 years of age." *Id.* at § 631(a).

In an action alleging disparate treatment under the ADEA, a plaintiff may prove an intentional discriminatory motive by presenting either direct, circumstantial or statistical evidence of age discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 519–21, 113 S.Ct. 2742, 2754, 125 L.Ed.2d 407 (1993); *Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 771–72 (11th Cir.1982); *Corbin v. Southland Int'l Trucks,* 25 F.3d 1545, 1548 (11th Cir.1994). In the instant action, Cook presents circumstantial evidence which he contends establishes that American General discriminated against the "terms and conditions" of his employment by demoting him to sales agent and forcing him to early retirement. Absent direct or statistical evidence, as is the case here, a plaintiff can establish intentional discrimination under a variation of the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)[4] and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

### A. Unlawful Demotion Claim

In pursuit of his unlawful demotion claim, Cook must first raise an inference of discrimination by establishing a prima facie case. *Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir.1994) (citation omitted). Presentation of the prima facie case then shifts the burden of proof to the defendant to state a legitimate, nondiscriminatory reason for the adverse employment action. *Carter v. City of Miami,* 870 F.2d 578, 584 (11th Cir.1989). After the legitimate, nondiscriminatory reason has been presented, "the burden returns to the plaintiff to prove by significantly probative evidence that the proffered reason is a pretext for discrimination." *Id.*

#### 1. The Prima Facie Case

Under the *McDonnell Douglas* framework, prima facie proof of age discrimination in demotion cases requires Cook to show: "(1) that he is a member of a protected group; (2)

---

**4.** While *McDonnell Douglas* involved a discrimination claim under Title VII, a variant of its analysis applies to claims under the ADEA as well. *Alphin v. Sears, Roebuck & Co.,* 940 F.2d 1497, 1500 (11th Cir.1991) (*citing Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir.1990)); *see also Corbin v. Southland Int'l Trucks,* 25 F.3d 1545, 1549 (11th Cir.1994).

that adverse employment action was taken against him, e.g., discharge, demotion, failure to hire; (3) he was replaced by a person outside the protected group; and (4) he was qualified for the position for which he was rejected." *Castle v. Sangamo Weston*, 837 F.2d 1550, 1558 (11th Cir.1988); *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1442 (11th Cir.1985), *cert. denied* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985) (quoting *Pace v. Southern Ry. Sys.*, 701 F.2d 1383, 1386 (11th Cir.1983), *cert. denied* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983)).

■ Under the ADEA, as opposed to Title VII race and sex claims, Cook does not necessarily have to show that his employer filled the position with someone outside the protected age group. The Supreme Court declared in *O'Connor v. Consolidated Coin Caterers Corp.*, —— U.S. ——, ——, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) that "the fact that one person in the protected class has lost out to another person in the protected class is . . . irrelevant, so long as he has lost out because of his age." As explained in *Corbin, supra:*

> The plaintiff in an age discrimination case may establish a prima facie case merely by establishing that his replacement was younger than he [but over forty years old], provided that the discrepancy between the ages, along with any other relevant evidence, is sufficient that a fact finder could reasonably infer age discrimination.

*Id.* at 1549 (brackets added); *see also O'Connor*, —— U.S. at ——, 116 S.Ct. at 1310 ("[T]he fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.").

■ It is undisputed that Cook is a member of a protected group (i.e., over the age of forty) and that he was demoted from the position of sales manager to that of sales agent. The plaintiff also has shown that a substantial age discrepancy existed between Cook and his replacement and between Cook and the other two sales managers. Although it is not clear whether Michael Peters was within the protected group at the time he replaced Cook, it is undisputed that Mr. Pe-

ters is approximately 20 years younger than Cook, and, thus, substantially younger than Cook. Moreover, although it is not clear whether the other sales managers were within the protected group at the time Cook was demoted, it is undisputed that they also were younger than the 61–year–old Cook.

American General argues, however, that where the replacement is within the protected group, the plaintiff must show additional evidence or circumstances creating an inference of age discrimination. In support, American General notes a line of Eleventh Circuit cases requiring such other evidence of discrimination based on age. *See Carter*, 870 F.2d at 583 (Plaintiff established a prima facie case in construing the evidence in the light most favorable to her and upon her showing that replacement was 16 years younger.); *Goldstein*, 758 F.2d at 1444 (Plaintiff established a prima facie case where replacement was 14 years younger and plaintiff was "highly qualified for his position."); *Pace*, 701 F.2d at 1390 ("[W]here the replacement was only two years younger than" the terminated employee and where there was "no direct proof of discriminatory intent, and no statistical evidence showing a pattern of discriminatory activity," the terminated employee failed to present proof giving "rise to an inference of age discrimination.").

The Court recognizes that requiring additional evidence may well prove unnecessary in light of the recent Supreme Court decision in *O'Connor*. Nevertheless, assuming the additional evidence requirement remains in effect, the Court finds that Cook's qualifications provide such additional support. The defendant has acknowledged that it has never contended that Plaintiff was not qualified for the position from which he was demoted.

Accordingly, the Court finds that Cook has established a prima facie case of age discrimination in his demotion.

### 2. *Rebuttal*

■ Because Cook has established his prima facie case, the burden shifts to American General to "articulate some legitimate, nondiscriminatory reason" for the demotion of Cook. *McDonnell Douglas*, 411 U.S. at 802,

93 S.Ct. at 1824. Here, the court finds that American General has rebutted the inference of age discrimination. District Manager Joe Yates testified that because it was necessary to displace one of the three sales managers to make room for Mr. Peters, he made the decision to demote Cook. Yates further testified that he selected Cook because he had lost confidence in Cook's managerial ability due to the Tye matter and because Cook was the least productive of the three managers in the Dothan District Office. The Court finds that Yates' explanation regarding Cook's demotion is sufficient to satisfy American General's "exceedingly light" burden.[5] *Perryman v. Johnson Products Co.*, 698 F.2d 1138, 1142 (11th Cir.1983).

### 3. *Failure to Raise a Genuine Issue of Fact on Pretext*

Once the defendant satisfies its burden of production, the *McDonnell Douglas* framework, with its presumptions and burdens, drops out of the case, and the only inquiry becomes "whether [the] plaintiff has proven 'that the employer intentionally discriminated against' him because of his [age]." *St. Mary's v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).[6] Cook must show "that discrimination was the real reason" for his demotion, and "it is not enough ... to disbelieve the employer...." *Id.* at 512 n. 4, 113 S.Ct. at 2750 n. 4 (emphasis supplied).

■ Cook contends that American General's claim that it had lost confidence in Cook's ability is "ludicrous" and a pretext for a discriminatory employment action against Cook. Although it is undisputed that Cook had the lowest growth of the three sales managers, he contends such low productivity was caused by the assignment of bad sales

accounts and other problems. American General, however, points out that, as a result of the Tye matter, District Manager Peters was to be demoted to Sales Manager, and, consequently, it became necessary to displace one of the three existing Sales Managers. Of the three managers, Cook had the poorest performance, as measured by objective standards, and so he was selected for demotion to Sales Agent. Additionally, as a result of Cook's handling of the "Tye Affair," Regional Director Yates lost confidence in Cook's managerial ability, making Cook an even more attractive candidate for demotion. At most, Cook has raised a disputed issue of fact about whether American General's performance-based reason for demoting him was based upon a defective method of evaluating the employee's performance. This evidence, in turn, possibly could support a finding that American General's reason is false. However, the mere implausibility of the asserted reason is insufficient, standing alone, to create a jury issue. *St. Mary's*, 509 U.S. at 511 n. 4, 113 S.Ct. at 2749 n. 4.

Cook has not submitted any evidence demonstrating that American General's demotion decision was based on age considerations. Cook's only other attempt to show pretext in his assertion that after his demotion, two Sales Manager positions became available. American General filled these vacancies with men younger than Cook. It is undisputed, however, that after his demotion, Cook had informed the company in writing that he was not interested in a promotion and at no time did Cook ever retract his position. Hence, the Court finds this argument unpersuasive.

The Court finds Cook's explanations, without more, to be insufficient to raise a genuine

---

**5.** The court stresses that "the defendant must merely proffer [non-age] based reasons, not prove them." *Meeks v. Computer Assocs. Int'l.*, 15 F.3d 1013, 1019 (11th Cir.1994).

**6.** *St. Mary's* slightly modified the Title VII disparate treatment framework. Previously, a plaintiff could satisfy his or her Title VII burden of proof "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of be-

lief." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095; *see Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir.1992) (plaintiff satisfied burden by showing that employer's reasons were unworthy of credence); *Caban–Wheeler v. Elsea*, 904 F.2d 1549, 1554 (11th Cir.1990) (same). In other words, "the falsity of the employer's explanation [was] *alone enough* to compel judgment for the plaintiff." *St. Mary's*, 509 U.S. at 517, 113 S.Ct. at 2752 (emphasis supplied).

issue of material fact on the issue of pretext.[7] Accordingly, the Court finds that American General's motion for summary judgment as to Cook's claim of unlawful demotion is due to be granted.

## B. Constructive Discharge

■ "Another variation of age discrimination is a claim of constructive discharge." *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1559 (11th Cir.1988). To succeed on a constructive discharge claim, a plaintiff "must show that the employer's actions were impermissibly motivated by the plaintiff's age, and that these actions made the plaintiff's working conditions so intolerable that resignation is deemed involuntary." *Griswold v. Alabama Dept. of Industrial Relations*, 903 F.Supp. 1492, 1496 (M.D.Ala.1995).

■ In *Hill v. Winn–Dixie*, 934 F.2d 1518 (11th Cir.1991), the Eleventh Circuit repeated the familiar standard by which constructive discharge claims are analyzed:

'The law in this circuit with respect to constructive discharge is well-established. To show constructive discharge, the employee must prove that his working conditions were so difficult or unpleasant that a reasonable person would have felt compelled to resign.' Before finding a constructive discharge, this court has traditionally required a high degree of deterioration in an employee's working conditions, approaching the level of 'intolerable.'

*Id.* at 1527 (citations omitted). A reasonable employee is one who does not "assume the worst" or "jump to conclusions too fast." *Garner v. Wal–Mart Stores, Inc.*, 807 F.2d 1536 (11th Cir.1987).

■ In support of his constructive discharge claim, Cook offers the following: (1) that he was given a poor quality of accounts upon demotion, (2) that no salary adjustment was offered to him as had been offered to Peters, and (3) that he was denied two promotions given to two younger applicants.[8] Cook fails, however, to allege that he was given accounts that someone else in the same or similar position would not have received. Cook instead admits that he was given the only accounts that were available at the time. With regard to his claim that he did not receive a salary adjustment, Cook fails to allege that such treatment was unusual in Cook's circumstances—i.e., being demoted from Sales Manager to Sales Agent. Additionally, this allegation appears only in an unsworn letter from Cook to the EEOC and not in any other testimony, affidavit or pleading. Moreover, Cook's claim that he was

7. In deposition testimony, Cook states that "Mr. Peters made the statement to one of my friends that he was instructed to say nothing about my age before I was demoted." Cook Dep. at 51. Without further testimony or affidavit, the Court is unable to consider this hearsay information.

The Court reminds the parties that Rule 56(e) requires the nonmoving party to "go beyond the pleadings and by [his] affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e). "Supporting and opposing affidavits shall be made on personal knowledge ... set[ting] forth such facts as would be admissible in evidence." Fed.R.Civ.P. 56(e). Because the Cook statement appears to be hearsay and fails to meet the evidentiary requirements of personal knowledge under Rule 56(e), the Court declines to consider the statement in weighing plaintiff's pretext conditions.

8. It is unclear from the pleadings and opposing memorandum whether Plaintiff intends the failure to promote claim to be a separate claim. Because the failure to promote claim did not appear in the EEOC charge filed by Cook nor did the claim appear as a separate count in the Complaint, the Court assumes the denial of the two promotions is not a separate claim. Assuming such a claim could even be considered by this Court, the Court notes that it would likely not survive summary judgment.

In order to establish a prima facie case the plaintiff would have to show: (1) that he belongs to a protected group; (2) that he applied for and was qualified for the position for which the employer was seeking applicants; (3) that he was denied the promotion; and (4) that another equally or less qualified individual outside the protected class received the promotion. *Batey v. Stone*, 24 F.3d 1330, 1334 n. 11 (11th Cir.1994) (citing *Wu v. Thomas*, 847 F.2d 1480, 1483 (11th Cir.1988), *cert. denied*, 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989)); *see Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990). Cook admits he never applied for the promotions nor he did let any responsible person know he was interested in such promotions. Consequently, Cook fails to meet the second prong of the prima facie case.

denied two promotions due to age is undermined completely by his admission that he informed American General in writing that he did not wish to be considered for any promotions.

The Court finds that while these conditions may have been unpleasant for Cook, Cook has failed to produce sufficient evidence to present a jury question as to whether a reasonable person would find these working conditions intolerable, much less that the alleged adverse actions were motivated by age considerations. The Court notes, however, that even if Cook had been able to establish that he received less productive accounts than other sales agents, that he was not given a salary adjustment comparable to Peter's, and that American General management knew he was interested in a promotion to Sales Manager, the sufficiency of his evidence would still be questionable.

■ Accordingly, the Court finds that American General's motion for summary judgment as to Cook's constructive discharge claim is due to be granted.[9]

## II. State Law Breach of Contract Claim

■ American General has moved for summary judgment of Cook's claim of breach of contract. In his Complaint, Plaintiff claims that the American General sales manual and accompanying documents constitute an enforceable express employment contract and that American General breached that agreement by its demotion of Cook and its subsequent conduct. Citing the Alabama Employment At Will Doctrine and the at-will provision of the written employment contract, the defendant argues that it may terminate its employees for "a good reason, a wrong reason, or no reason" without breaching its employment agreement. *See Culbreth v. Woodham Plumbing Co.*, 599 So.2d 1120,

1121 (Ala.1992); *Meeks v. Opp Cotton Mills, Inc.*, 459 So.2d 814 (Ala.1984). Cook, apparently choosing to rely on his pleadings, has offered no response to American General's argument that Cook has no claim based on a state law breach of contract theory.

Finding the plaintiff's submission on this issue completely inadequate to defeat American General's motion for summary judgment, the Court has no option but to grant American General's motion for summary judgment as to this issue. Accordingly, the Court finds that American General's motion for summary judgment as to Cook's claim of breach of contract is due to be granted.

## CONCLUSION

Based on the foregoing, the Court finds that American General's motion for summary judgment is due to be granted. A judgment in accordance with this memorandum opinion will be entered separately.

---

9. Cook did not include a constructive discharge claim in his EEOC charge. The scope of a judicial complaint under the ADEA is limited to the acts of discrimination contained in the EEOC charge or claims " 'like or related' " to the claims raised in the charge. *Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1569 (11th Cir.1987); *see also Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970) (holding that "the allegations in a judicial complaint ... 'may encompass

any kind of discrimination like or related to the allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission' "). Hence an issue arises about whether the constructive discharge claim is "like or related" to his demotion claim. The court declines to address this issue because, even assuming that the constructive discharge claim is properly before the court, summary judgment is due to be granted on this claim.